Steven L. Krongold (State Bar No. 125952)
**KRONGOLD LAW CORP., P.C.**
**A PROFESSIONAL CORPORATION**
100 Spectrum Center Drive, Suite 900
Irvine, California 92618
Phone: 949-651-1900
Email: *steve@krongoldlaw.com*

Attorney for Plaintiff
OmniPrint International, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNIPRINT INTERNATIONAL, INC., a Nevada corporation, | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. BREACH OF CONTRACT; |
| EDGAR SILVA AMBRIZ, aka EDGAR AMBRIZ SILVA, an individual; MARIA EUGENIA AMBRIZ, an individual; SERGIO RAMIREZ, an individual; GOODWELL SCIENCE, LLC, a California limited liability company; ANGEL JOSE RAMIREZ, an individual; ANGELBOY PRINTS, LLC, a California limited liability company; and DOES 1-10, inclusive, | 2. MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT; |
| | 3. BREACH OF DUTY OF LOYALTY; AND |
| | 4. UNFAIR COMPETITION |
| | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

-1-
COMPLAINT

COMES NOW, Plaintiff and alleges as follows:

## NATURE OF CLAIMS

1.      A former employee, charged with product development, and those who conspired with and/or aided and abetted him, stole highly confidential ink formulas used for direct-to-garment ("DTG") and direct-to-film ("DTF") digital printers. The former employee also stole confidential customer, vendor and pricing information, all of which were used to provide an immediate head-start for a competing business.

2.      The information on ink formulas was developed after many expensive and painstaking years of R&D. The information on customers and vendors was likewise developed over many years and based on thousands of hours of marketing and sales efforts. In one fell swoop, defendants received invaluable scientific and commercial information that will enable them to compete unfairly and damage the goodwill and reputation that took plaintiff years to build.

3.      By this action, plaintiff seeks injunctive relief and monetary damages, for, among other things, theft of trade secrets, breach of duty of loyalty, and unfair competition.

## JURISDICTION AND VENUE

4.      This is an action for violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 et seq., and for related state or common law claims. The subject matter involves trade secrets related to a product used in, or intended for use in, interstate and foreign commerce. This Court has subject matter jurisdiction of this action since it arises under the laws of the United States of America pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in this district as a substantial part of the material acts and omissions giving rise to the claims occurred within this judicial district pursuant to 28 U.S.C. § 1391(b). Venue is also proper in the district where defendants reside or may be found pursuant to 28 U.S.C. § 1400(a).

## THE PARTIES

6.     Plaintiff OMNIPRINT INTERNATIONAL, INC. ("Plaintiff" or "OmniPrint") is, and at all times mentioned herein was, a corporation duly formed under the laws of the state of Nevada, with its principal place of business located in the county of Orange, state of California.

7.     Defendant EDGAR SILVA AMBRIZ, aka EDGAR AMBRIZ SILVA ("Ambriz") is, and at all times mentioned herein was, an individual, residing in the county of Orange, state of California.

8.     Defendant MARIA EUGENIA AMBRIZ ("Maria Ambriz") is, and at all times mentioned herein was, an individual, residing in the county of Orange, state of California, and the wife of Ambriz.

9.     Defendant SERGIO RAMIREZ ("Sergio Ramirez") is, and at all times mentioned herein was, an individual, residing in the county of Orange, state of California, and a former employee of OmniPrint.

10.    Defendant GOODWELL SCIENCE, LLC ("Goodwell Science"), is, and at all times mentioned herein was, a California limited liability company, with its principal place of business in the county of Orange, state of California. At all times mentioned herein, Ambriz was a member and manager of Goodwell Science. At all times mentioned herein, Maria Ambriz was a manager, employee or agent of Goodwell Science.

11.    Defendant ANGEL JOSE RAMIREZ ("Angel Ramirez") is, and at all times mentioned herein was, an individual, residing in the county of San Bernardino, state of California.

12.     Defendant ANGELBOY PRINTS, LLC ("AngelBoy") is a California limited liability company, with its principal place of business located in the county of San Bernardino, state of California. At all times mentioned herein, Angel Ramirez was a member and manager of AngelBoy.

13.     The true names and capacities, whether individual, corporate, associate or otherwise of defendants herein named as DOES 1 through 10, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will seek leave of this court to amend this complaint to state the true names and capacities of such fictitiously named defendants when the same have been ascertained.

14.     Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each defendant, whether named or unnamed, was the agent, servant, and employee of the other defendants, and each of them, whether named or unnamed, and in committing the acts and omissions herein mentioned, was acting within the course and scope of said agency, servitude, and employment.  At all times mentioned herein, each defendant, whether named or unnamed, was chargeable with and bound by the knowledge and information received by and on behalf of each other defendant.  Plaintiff is further informed and believes, and based thereon alleges, that at all times relevant herein, the acts of the defendants, whether named or unnamed, and each of them, were ratified and adopted by the acts of their co-defendants, whether named or unnamed, and each of them.

15.     Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each defendant, whether named or unnamed, was an agent, coconspirator and joint venturer of each of the remaining defendants and, in doing the things hereinafter alleged, was acting within the course and scope of such agency, conspiracy and joint venture.

## COMMON ALLEGATIONS

16.     OmniPrint develops, markets and sells high-end DTG/DTF digital printers, such as the FreeJet 330TX and Cheetah. In addition to printers, OmniPrint develops and sells specially formulated DTG/DTF inks, marketed as Direct Ink Gamut Plus ("Gamut Plus Inks"). The award-winning Gamut Plus Inks, created after years of research and development, contain an exclusive mixture of polymers, proprietary dispersion technology and the smallest particle size in the industry that enables the ink to bind to polyester and cotton blend garments and produce vibrant colors and hues. OmniPrint sells Gamut Plus Inks at trade shows and online. The online store is located at https://store.omniprintonline.com/collections/inks.

17.     From April 30, 2018 to October 29, 2021, OmniPrint employed Ambriz as Senior R&D Engineer and Director of Product Development. In the course of his employment with OmniPrint, Ambriz had access to and possession of certain highly confidential documentation on the development and creation of Gamut Plus Inks, including but not limited to (a) Ink Formulation Template and Release Steps; (b) Pretreatment Formulation Template and Release Steps; (c) Ink Batch Adjustment Quality Control Procedure; and (d) Pretreatment Batch Adjustment Quality Control Procedure (collectively, "Gamut Ink Documents").

18.     While employed with OmniPrint, Ambriz was trained on and assisted in the development of Gamut Plus Inks for the entire line of OmniPrint printers, including the FreeJet TX Plus, Cheetah industrial printer and OmniPrint i2 printer. Using the Gamut Ink Documents, Ambriz had access to and possession of highly confidential information on OmniPrint's proprietary ink formulations, pretreatment processes, and ink testing (collectively, "Ink Formulas and Processes").

19.     As Senior R&D Engineer and Director of Product Development, Ambriz had access to sensitive and confidential information on existing and prospective customers of OmniPrint. The information to which Ambriz had access

included customer names, physical address, email address, phone number, contact person, order history, pricing data and a variety of other important purchase and sale information (collectively, "Customer Information").

20. As Senior R&D Engineer and Director of Product Development, Ambriz had access to sensitive and confidential information on existing suppliers and vendors of OmniPrint. The information to which Ambriz had access included supplier or vendor names, physical address, email address, phone number, contact person, order history, pricing data and a variety of other important order information (collectively, "Supplier/Vendor Information").

21. While employed, Ambriz signed a Confidential Information & Inventions Assignment Agreement, effective April 23, 2021, a copy of which is attached hereto as <u>Exhibit 1</u> ("Confidentiality Agreement").

22. In Section 3(a) of the Confidentiality Agreement, Ambriz agreed that all "Confidential Information," which included "Trade Secret Information" (both defined terms), "shall be deemed property of OmniPrint." Ambriz further agreed that he "shall not, directly or indirectly, use or disclose any Confidential Information, except as may be required for the proper performance of Employee's duties as an Employee for and on behalf of OmniPrint, and in accordance with OmniPrint's policies and procedures relating thereto.

23. In Section 3(b) of the Confidentiality Agreement, Ambriz agreed not to "copy, reproduce or otherwise duplicate, record, abstract or summarize any Confidential Information, or use any computer, equipment, tools or other property of OmniPrint, except as expressly permitted or required for the proper performance of Employee's duties for and on behalf of OmniPrint.

24. In Section 3(c) of the Confidentiality Agreement, Ambriz agreed to "deliver promptly to OmniPrint, at the termination of [his employment] all Confidential Information (including all copies thereof, regardless of the medium in

which such information may be stored) and all computers, equipment, tools and other property of OmniPrint.

25.    In Section 3(e) of the Confidentiality Agreement, Ambriz acknowledged that his obligations set forth in the agreement shall apply "to all Confidential Information, Trade Secret and/or proprietary information learned from or acquired [by him] during [his] engagement with OmniPrint from others with whom OmniPrint has or had a business relationship."

26.    In Section 5(a) of the Confidentiality Agreement, Ambriz agreed, during and post-employment, not to "take, utilize, sell, share, communicate, transfer or otherwise disseminate OmniPrint's Trade Secret Information or Confidential Information, for the benefit of Employee or any other party, or with the intent to harm OmniPrint."

27.    In Section 5(b) of the Confidentiality Agreement, Ambriz agreed that the names and contact information of OmniPrint's customers (actual and prospective) constitute Trade Secrets of OmniPrint and that unauthorized use and disclosure of such information would "constitute unfair competition." As such, Ambriz agreed that post-employment he would not solicit OmniPrint's customers.

28.    In Section 3(d), Ambriz agreed that "the unauthorized taking of any of OmniPrint's Trade Secrets is a crime under State Law, punishable by fine and potential imprisonment." See Cal. Pen. Code § 499c. Ambriz further acknowledged and agreed that any unauthorized taking or use of OmniPrint's Trade Secrets "could result in civil liability under California's Uniform Trade Secrets Act, and that willful and malicious misappropriation may result in, among other things, an award against [him] for damages in addition to OmniPrint's attorneys' fees and costs incurred in enforcing OmniPrint's rights. See Cal. Civil Code §§ 3426-3426.11.

29.    On October 29, 2021, Ambriz voluntarily resigned from OmniPrint, claiming that he was going to work in a different industry than DTG/DTF printers and printer ink. As part of the resignation process, Ambriz signed a Non-Disclosure—Employee Exit Agreement, a copy of which is attached hereto as Exhibit 2 ("Exit Agreement"). In Section 1 of the Exit Agreement, Ambriz acknowledged that he had "special access to confidential, trade secret and proprietary information of OmniPrint, including . . . the operational aspects of OmniPrint's technology . . . which is not known to the industry or public." Ambriz acknowledged the duty to maintain all Confidential Information in strict confidence and not use or disclose such information.

30.    On or about October 18, 2022, OmniPrint learned that contrary to working in a different industry (as represented), Ambriz had been developing DTG and DTF inks using OmniPrint's proprietary formulas and technology. OmniPrint is informed and believes, and based thereon alleges, that Ambriz copied and used the Gamut Ink Documents and the Ink Formulas and Processes, all which belonged to OmniPrint, to market and sell a competing ink product line.

31.    On October 18, 2022, Ambriz sent a group message to DTG owners offering his services as an "Inkjet Ink Developer (Chemical Engineer with a Masters in Materials and Polymer Science)."  In this message, Ambriz stated that he had "developed more than 30 inkjet inks for the textile industry" and wanted to "provide solutions to the industry, giving the best price and quality." Ambriz asked the group, i.e., potential customers, "what is a fair price for a DTG/DTF ink? and "what kind of problems are you having with your current ink supplier?"

32.    On or about December 2022, Ambriz uploaded a video to social media showing a laboratory containing the same testing and DTG/DTFprinting equipment used by OmniPrint. The video was produced by Sergio Ramirez. In the video, Angel Ramirez, owner of AngelBoy, is shown mixing ink and bottling the product with the

AngelBoy logo. The video shows Ambriz watching and directing Angel Ramirez. Ambriz appears to be explaining and supervising the process.

33.     At all times mentioned herein, Defendant Angel Ramirez, through AngelBoy, was a customer of OmniPrint, having purchased DTG/DTF printers, Gamut Plus Inks and related products. At all times mentioned herein, Sergio Ramirez was a former employee of OmniPrint.

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract; Against Defendant Ambriz)**

34.     Plaintiff realleges paragraphs 1 through 33, inclusive, of this Complaint and incorporates those allegations herein as though set forth in full.

35.     On April 23, 2021, OmniPrint, as employer, and Ambriz, as employee, entered into the Confidentiality Agreement concerning the maintenance, use and disclosure of OmniPrint's Confidential Information during and after his employment as Director of Product Development.

36.     OmniPrint has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement.

37.     Within the last two years, Ambriz breached:

- Section 3(a) of the Confidentiality Agreement when, post-employment, Ambriz improperly and without authorization, used or disclosed Confidential Information for personal purposes, including to develop, market and sell DTG/DTF inks;

- Section 3(b) of the Confidentiality Agreement when Ambriz made a copy, reproduced or otherwise duplicated or summarized Confidential Information for personal use;

- Section 3(b) of the Confidentiality Agreement when Ambriz used computers, equipment, tools or other property of OmniPrint to develop, market and sell DTG/DTF inks;

- Section 3(c) of the Confidentiality Agreement when Ambriz failed to deliver promptly to OmniPrint, at the termination of his employment, all Confidential Information (including all copies thereof, regardless of the medium in which such information may be stored);

- Section 5(a) of the Confidentiality Agreement when Ambriz, without consent or authorization, took, utilized, sold, shared, communicated, transferred or otherwise disseminated OmniPrint's Trade Secret Information or Confidential Information, for his personal benefit or with the intent to harm OmniPrint; and

- Section 5(b) of the Confidentiality Agreement when Ambriz, without consent or authorization, solicited customers of OmniPrint, including AngelBoy, using Confidential Information.

38.     As a direct and foreseeable consequence of the aforesaid breaches, OmniPrint has been damaged, the exact amount of which will be determined according to proof at trial.

39.     As a direct and foreseeable consequence of the aforesaid breaches, OmniPrint has incurred, and will continue to incur, attorney fees in an amount subject to proof at the time of trial.  Pursuant to Section 18 of the Confidentiality Agreement, OmniPrint reserves the right to recover reasonable attorney fees as prevailing party.

40.     As a direct and foreseeable consequence of the aforesaid continuing breaches, unless restrained and enjoined by order of this Court, defendant's conduct will cause great and irreparable injury to OmniPrint, its business, its reputation and goodwill.  OmniPrint has no adequate remedy at law for the injuries that have been,

and will continue to be, sustained in this action. Pursuant to Section 6, and applicable law, OmniPrint reserves its right to temporary, preliminary and permanent injunctive relief to prevent future or irreparable harm.

**SECOND CLAIM FOR RELIEF**

**(Misappropriation of Trade Secrets Under DTSA;**

**Against All Defendants, and Does 1-10, Inclusive)**

41.     Plaintiff realleges paragraphs 1 through 33, inclusive, of this Complaint and incorporates those allegations herein as though set forth in full.

42.     OmniPrint uses interstate commerce to purchase materials to develop, formulate and test Gamut Plus Inks. OmniPrint uses interstate commerce to market and sell Gamut Plus Inks, including the U.S. Mail, the Internet (via an online store) and various social media platforms.

43.     The Gamut Ink Documents, Ink Formulas and Processes, Customer Information and Supplier/Vendor Information (collectively, "Trade Secrets") were created and developed after significant effort and expense on the part of OmniPrint. The aforesaid information derives independent economic value because the information is not generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

44.     The Trade Secrets were maintained in confidence by OmniPrint which has, at all times mentioned herein, taken reasonable precautions to keep such information secret and used for legitimate business purposes. These measures include advising employees, such as Ambriz, that the information is highly confidential, restricting access to the information and requiring employees to sign a Confidentiality Agreement.

45.    Defendant Ambriz used improper means to acquire knowledge of the
Trade Secrets by, among other things, breaching a duty to maintain secrecy and
misrepresenting and concealing his true intention to establish a competing
DTG/DTF ink business.

46.    Defendants Maria Ambriz, Sergio Ramirez, Goodwell Science, Angel
Ramirez, AngelBoy and Does 1 through 10, inclusive, engaged in misappropriation,
among other things, by the disclosure or use of the trade secrets without OmniPrint's
express or implied consent when, at the time of the disclosure or use, defendants
knew or had reason to know that their knowledge was derived from or through
persons who had utilized improper means to acquire the trade secrets or who owed a
duty to maintain is secrecy or limit its use.

47.    Plaintiff is informed and believes, and thereon alleges, that Defendants
Edgar Ambriz, Maria Ambriz, Sergio Ramirez, Goodwell Science, Angel Ramirez,
AngelBoy, and Does 1 through 10, inclusive, misappropriated the trade secrets to
cause harm to OmniPrint by unfairly competing with and diverting business from
OmniPrint.

48.    As a proximate result of the aforementioned wrongful acts, as alleged
herein, OmniPrint has suffered, and will continue to suffer, damages for actual loss
in an amount subject to proof at the time of trial.

49.    As a further proximate result of the wrongful conduct alleged herein,
Defendants Edgar Ambriz, Maria Ambriz, Sergio Ramirez, Goodwell Science,
Angel Ramirez, AngelBoy, and Does 1 through 10, inclusive, have been unjustly
enriched damages that is not addressed in computing damages for actual loss.

50.    Plaintiff is informed and believes, and thereon alleges, that the
aforementioned wrongful acts of defendants were done willfully and maliciously,

thus entitling OmniPrint to recover exemplary damages in an amount not exceeding twice the award of actual damages.

51.    As a proximate result of the aforementioned wrongful acts, as alleged herein, plaintiff has incurred, and will continue to incur, attorney's fees in an amount subject to proof at the time of trial. OmniPrint reserves its right to recover reasonable attorney fees based on the bad faith misappropriation of trade secrets.

52.    The wrongful acts of defendants, as alleged herein, unless restrained and enjoined by order of this Court, will cause great and irreparable injury to OmniPrint, its business, its reputation and goodwill.  OmniPrint has no adequate remedy at law for the injuries that have been, and will continue to be, sustained in this action.

### THIRD CLAIM FOR RELIEF

### (Breach of Duty of Loyalty; Against Defendant Ambriz)

53.    Plaintiff realleges paragraphs 1 through 33, inclusive, of this Complaint and incorporates those allegations herein as though set forth in full.

54.    Defendant Ambriz was employed by OmniPrint as Director of Product Development.

55.    As employee, Ambriz owed OmniPrint a duty of undivided loyalty which, among other things, required Ambriz to act in good faith and in the best interests of the company, to maintain the confidentiality of trade secrets, and to refrain from engaging in any act or omission calculated or likely to injure OmniPrint.  As such, equity and conscience demand that Ambriz not use his position to further his own private interests.

56.    While still employed for OmniPrint, Defendant Ambriz (1) used OmniPrint time, facilities, and/or trade secrets to build Goodwell Science, a competing business and (2) diverted, or attempted to divert, business to Goodwell

Science. This conduct violated Labor Code, § 2863, which provides, in part, that "[a]n employee who has any business to transact on his own account, similar to that intrusted to him by his employer, shall always give the preference to the business of the employer."

57.    Defendant received compensation from OmniPrint while he acted against the best interests of his employer. Had Ambriz resigned as soon as he decided to form and build Goodwell Science using OmniPrint time, facilities or proprietary information, or had he disclosed his attempts to divert business, OmniPrint would have terminated Ambriz, and saved the compensation that was paid.

58.    Plaintiff therefore reserves the right to recover Ambriz's compensation as damages directly flowing from the breach of the duty of loyalty.

59.    As a direct and proximate result of the actions as alleged herein, OmniPrint has suffered, and continues to suffer, other actual damages in an amount subject to proof at the time of trial.

## FOURTH CLAIM FOR RELIEF

### (Unfair Competition; Against All Defendants and Does 1-10, Inclusive)

60.    Plaintiff realleges paragraphs 1 through 30, inclusive, of this Complaint and incorporates those allegations herein as though set forth in full.

61.    Plaintiff is informed and believes, and based thereon alleges, that each defendant had knowledge of and agreed to both the objective and the course of action that resulted in the misappropriation of trade secrets alleged herein, that there was a wrongful act committed pursuant to that agreement, to wit, the misappropriation of trade secrets, and that there was resulting damage.

62.    The acts and omissions of defendants, and Does 1 through 10, as alleged herein, particularly using Confidential Information to develop competing DTG/DTF inks and to solicit existing or prospective customers, constitute unlawful,

KRONGOLD LAW CORP.                        -14-
                                       COMPLAINT

unfair or fraudulent business acts or practices pursuant to California's Unfair Competition Law, as set forth in California Business and Professions Code, section 17200 *et. seq.* ("UCL") and the common law of the State of California.

63.    Plaintiff has suffered injury in fact and has lost money or property as a result of the alleged unfair competition.

64.    Plaintiff is entitled to restitution of any monies obtained by defendants, and Does 1 through 10, as a direct and proximate result of violation of the UCL, and common law.

65.    The wrongful acts of defendants, and Does 1 through 10, as alleged herein, unless restrained and enjoined by order of this Court, will cause great and irreparable injury to Plaintiff, its business, its reputation and goodwill. Plaintiff has no adequate remedy at law for the injuries that have been, and will continue to be, sustained in this action.

**WHEREFORE,** plaintiff prays that this Court enter judgment in its favor and against Defendants, and Does 1 through 10, as follows:

### ON THE FIRST CLAIM FOR RELIEF:

1.    For compensatory and special damages according to proof;

2.    For injunctive relief against the further breaches of contract;

3.    For reasonable attorney's fees as prevailing party pursuant to California Civil Code § 1717;

### ON THE SECOND CLAIM FOR RELIEF:

4.    For an order providing for the seizure of property necessary to prevent the propagation or dissemination of the trade secret that is the subject of the action, pursuant to 18 U.S.C. § 1836(2)(A);

5.    For a temporary restraining order, preliminary injunction, and/or permanent injunction, pursuant to 18 U.S.C. § 1836(3)(A), enjoining Defendants, and each of their agents, servants, and employees, and those persons in active

concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, pending a final judgment in this action, from directly or indirectly:

A. using, disclosing, selling, transferring, publishing, or disseminating any confidential and proprietary information contained in the files or records of OmniPrint, whether in the form of hard copy or information stored electronically or on a computer hard drive or disk, including but not limited to Gamut Ink Documents, Ink Formulas and Processes, Customer Information and Supplier/Vendor Information (collectively, "Trade Secrets").

B. deleting, removing, destroying, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, any of OmniPrint's personal property, books, records, documents, correspondence, contracts, agreements, manuals, or other corporate or financial records of any kind in the possession, custody or control of Defendants, and each of them.

C. deleting, removing, destroying, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, any information constituting Trade Secrets of OmniPrint.

6.      For actual losses incurred by OmniPrint, the unjust enrichment caused by the misappropriation, and/or a reasonable royalty for the use of the misappropriated information, in an amount according to proof at trial, pursuant to 18 U.S.C. § 1836(3)(B);

7.      For exemplary damages of up to twice the amount of actual damages pursuant to 18 U.S.C. § 1836(3)(C);

8.      For reasonable attorney's fees pursuant to 18 U.S.C. § 1836(3)(D);

**ON THE THIRD CAUSE OF ACTION:**

9.      For return of compensation paid while defendant violated the duty of loyalty;

10.     For general or compensatory damages according to proof at trial;

**ON THE FOURTH CAUSE OF ACTION:**

11.     For restitution;

12.     For injunctive relief;

**ON ALL CLAIMS FOR RELIEF**

13.     For costs of suit;

14.     For pre-judgment interest; and

15.     For such other and further relief as the Court deems necessary or proper.

Dated: December 23, 2022              KRONGOLD LAW CORP., P.C.

                              By: *Steven L. Krongold*
                                  Steven L. Krongold
                                  Attorney for Plaintiff
                                  OmniPrint International, Inc.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiff hereby demands a jury trial of all issues so triable.

Dated: December 23, 2022              KRONGOLD LAW CORP., P.C.

                              By: *Steven L. Krongold*
                                  Steven L. Krongold
                                  Attorney for Plaintiff
                                  Omniprint International, Inc.

# EXHIBIT 1

## CONFIDENTIAL INFORMATION & INVENTIONS ASSIGNMENT

*This Confidential Information & Inventions Assignment Agreement is a pre-condition to initiating*
*employment with OmniPrint, and is an ongoing requirement of continued employment.*
*All employment with OmniPrint is "at will"*

**DATE -** This Agreement is Effective as of:  04/23/2021

This Confidential Information & Inventions Assignment agreement ("Agreement") is made by and between **OmniPrint International, Inc.** ("OmniPrint") and   Edgar Ambriz  ("**Employee**").

Employee is either an existing "at will" employee or is a person who is being offered "at will" employment, pending completion of background checks and/or other hiring protocols, and agreement to this Agreement.

### RECITALS

*Whereas,* OmniPrint is a technology and media OmniPrint engaged in, among other things, the development, marketing and sales of high-end commercial printers, inks, software and technology for the direct-to-garment ("DTG") printing industry.

*Whereas,* OmniPrint has customers throughout the world, and competes worldwide with businesses that create, manufacture, distribute, sell and market, DTG printers, inks, consumables, accessories, software and related services and technology products, to the garment printing industry.

*Whereas,* OmniPrint has expended, and will continue expend, a great deal of time, money and effort to develop and maintain its proprietary, trade secret and confidential business information which, if misused, misappropriated, or disclosed to outside parties without OmniPrint's pre-authorization, could cause severe damages to OmniPrint, including its reputation and future viability.

*Whereas,* Employee agrees and acknowledges that, as a result of Employee's employment and/or continued employment with OmniPrint, Employee has had and/or will have access to (among other things) proprietary, trade secret, or other confidential information relating to OmniPrint's business and future plans.

*Whereas,* Employee understands that, in connection with Employee's employment with OmniPrint, Employee may develop or create inventions and other Work Product (as defined herein), whether at OmniPrint's direction or otherwise.

*Whereas,* Employee acknowledges OmniPrint's business interests in needing to implement protections and protocols, to help ensure its proper ownership and control of inventions, intellectual property, proprietary information and trade secrets, or other confidential information, and to ensure that employees (including Employee) do not misappropriate, make claims to, or misuse any invention, intellectual property, proprietary information and trade secret, or other confidential information, which relates to OmniPrint's business.

*Whereas*, Employee desires to be employed and/or to continue to be employed "at will" by OmniPrint, and to be eligible for opportunities for advancement, additional responsibilities and/or compensation increases, and to be trusted with access to proprietary, trade secret and/or other confidential information, which would otherwise not be available to Employee, except for Employee's execution of this Agreement.

*Now Therefore*, in consideration of the foregoing (including of Employee's employment prospects and potential career opportunities), and of the mutual covenants and agreements hereinafter set forth, the adequacy and sufficiency of which are hereby acknowledged, Employee and OmniPrint agree as follows:

**Definitions** for purposes of this Agreement:

***Work Product*** - Work Product shall include, but is not limited to, all creative work in any format or medium of expression including, without limitation, that which is capable of copyright, trademark or patent registrations, or statutory or common law protection, such as software, written documentation, memoranda, musical compositions or recordings, photographs and images, artwork in any medium (whether still or moving), sound recordings, audiovisual works, compilations of data or information, ideas, designs, concepts, inventions, discoveries, improvements, processes, organization or efficiency systems, algorithms, and otherwise.   Work Product further includes works which:

- prepared or developed by Employee or at Employee's direction, whether individually or jointly with others, during Employee's employment with OmniPrint;
- relate to or arise in any way out of (1) current and/or anticipated businesses and/or activities of OmniPrint; (2) OmniPrint's current and/or anticipated research or development; (3) any work performed by Employee for OmniPrint; and/or (4) any information or assistance provided by OmniPrint, including but not limited to OmniPrint's Confidential Information.

***Confidential Information*** – Confidential Information shall mean all non-public business information including, without limitation, all non-public information of OmniPrint (including any parent entity, subsidiaries and/or affiliates), regardless of the form or medium in which it is or was created, stored, or preserved.  Confidential Information includes all Trade Secret Information. Employee understands that Confidential Information may or may not be labeled as "confidential," and Employee will treat all information as confidential unless otherwise informed by Employee's supervisor.

***Trade Secrets*** – Trade Secrets of OmniPrint shall mean all non-public information, which OmniPrint desires to keep confidential and for which OmniPrint deploys no less than reasonable efforts to maintain its secrecy.  Trade Secrets may exist in any form, medium or method of communication, regardless of how the Trade Secret was created, stored, reflected or preserved.  Trade Secrets derive economic value, actual or potential, from being generally unknown to, and not being readily ascertainable by, the public in general (who might otherwise obtain economic value from its disclosure or use).  OmniPrint's Trade Secrets may include, without limitation, all confidential information in relation to OmniPrint's research; development plans and activities; future strategies; mobile platforms and websites; web-based applications on its computer server; compilations of data; product plans; sales, marketing and business plans and strategies; presentations for actual and/or potential customers; pricing, profit margins and other financial information; drawings; current and planned manufacturing or distribution methods and processes; personnel information, including without limitation, the skills and compensation of OmniPrint employees; inventions, creations, concepts, ideas, designs and formulae; customer lists (including without limitation, customer names, contact information, billing and pricing information); current and anticipated customer needs, preferences and requirements; acquisition targets; plans for product improvements; price lists; market studies; computer software and programs (including object code and source code); and computer and database technologies, systems, structures and architectures.

1. **Assignment of Inventions, Work Product & Intellectual Property**.
   a. <u>Assignment by Employee</u>. By this Agreement, Employee hereby automatically and fully assigns all of Employee's Work Product, inventions, creative work, and intellectual property rights, without reservation or restriction, including all rights (pecuniary or otherwise), title, and interest in any intellectual property or inventions made, conceived, reduced to practice, or learned of by Employee, whether the same was developed alone or in combination with others, and whether or not reduced to practice or fixed in a tangible medium of expression or communication.  This assignment includes, without limitation, all work and concepts, patents, trademarks, copyrights and/or trade secrets, and all Work Product or "works made for hire."
   b. <u>Effective for the Full Scope of Employment & Thereafter</u>.  This assignment by Employee

to OmniPrint is effective as of the first day of employment or the Effective Date noted above, whichever is earlier, and shall last through the final day of employment and thereafter.

c.  "Work Made for Hire." Employee further acknowledges and agrees that all copyrightable Work Product prepared by Employee within the scope of Employee's engagement with OmniPrint are "works made for hire" (as that term is currently defined by the Copyright Act as of the Effective Date hereof); accordingly, OmniPrint shall own all copyrights thereto, without reservation or restriction.

d.  Disclosure of Inventions. Employee shall promptly disclose to OmniPrint all Work Product, intellectual property and other inventions which Employee has (in whole or in part) created. All such Work Product is and shall forthwith become the property of OmniPrint, and is hereby assigned to OmniPrint, whether or not patentable or copyrightable, or capable of being trademarked.

e.  Verifying Documentation. Employee will promptly execute any documents or instruments, upon request by OmniPrint (including OmniPrint's attorney(s) or other designee), deemed necessary or proper by OmniPrint, in order to formally convey, transfer and document OmniPrint's full ownership of any Work product, inventions, or intellectual property, or to confirm or evidence OmniPrint's title therein, and in order to enable OmniPrint to obtain and enforce registered patents, trademarks or copyrights, in any jurisdiction around the world. Employee will perform Employee's obligations under this Section without further compensation or other consideration, except for reimbursement of reasonable out-of-pocket expenses directly incurred due to the request of OmniPrint.

f.  Employee's Preexisting Inventions & Intellectual Property. Employee shall specify, on *Attachment A* hereto, all of Employee's preexisting inventions and intellectual property, wholly created prior to any employment with OmniPrint, and which did not utilize any of OmniPrint's Confidential Information, Trade Secrets, inventions or intellectual property. If no such specification is made on Attachment A, or if Employee writes "none" or similar designation thereon, Employee shall be conclusively deemed not to have any such Work Product or inventions, or intellectual property, and accordingly, all of the foregoing shall automatically be deemed to be the sole and exclusive property of OmniPrint.

g.  Original Development. Employee further represents and warrants to OmniPrint that all work that Employee performs for OmniPrint, and all Work Product, inventions and intellectual property which Employee produces, will not knowingly infringe upon or violate any patent, copyright, trademark, trade secret, or other property right of any of Employee's former employers, or of any third party. Employee will not disclose to OmniPrint, or utilize in any of Employee's work at OmniPrint, any confidential or proprietary information belonging to others, unless both the owner thereof and OmniPrint have consented in writing.

2.  **NOTICE TO EMPLOYEE – Exceptions to Assignment.** Employee's assignment of inventions, Work Product and intellectual property, as provided for hereunder, do not apply in certain circumstances, pursuant to applicable law. In general, Employee will be entitled to retain ownership of Employee's inventions, provided no equipment, research, discoveries, tools, supplies, facilities, offices, Trade Secrets or Confidential Information of OmniPrint was used in any manner, in Employee's conceiving of or creating the invention, and provided that the invention was developed entirely on Employee's own time (completely outside of, and disconnected from, work for OmniPrint).

a.  **Notice of California Law - Labor Code Section 2870**. The following is the text of California Labor Code Section 2870, which provides certain rights to you as the Employee, regarding your ability to maintain ownership of inventions which you create, under certain circumstances:

***California Labor Code § 2872***

*(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:*

> *(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or*
>
> *(2) Result from any work performed by the employee for the employer.*

*(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.*

3. **Restrictions Relating to Confidential Information and Other OmniPrint Property**.

   a. All Confidential Information shall be deemed property of OmniPrint. Employee shall use Employee's best efforts and diligence to protect the Confidential Information. Employee shall not, directly or indirectly, use or disclose any Confidential Information except as may be required for the proper performance of Employee's duties as an Employee for and on behalf of OmniPrint, and in accordance with OmniPrint's policies and procedures relating thereto.

   b. Employee will not copy, reproduce or otherwise duplicate, record, abstract or summarize any Confidential Information, or use any computers, equipment, tools or other property of OmniPrint, except as expressly permitted or required for the proper performance of Employee's duties for and on behalf of OmniPrint.

   c. Employee shall deliver promptly to OmniPrint, at the termination of Employee's engagement or at any other time upon OmniPrint's request, all Confidential Information (including all copies thereof, regardless of the medium in which such information may be stored) and all computers, equipment, tools and other property of OmniPrint.

   d. Employee acknowledges that the unauthorized taking of any of OmniPrint's Trade Secrets is a crime under State law, punishable by fine and potential imprisonment. Employee further acknowledges that such unauthorized taking or unauthorized use of OmniPrint's Trade Secrets could also result in civil liability under California's Uniform Trade Secrets Act, and that willful and malicious misappropriation may result in, among other things, an award against Employee for damages in addition to OmniPrint's attorneys' fees and costs incurred in enforcing OmniPrint's rights.

   e. Each of Employee's obligations herein shall also apply to all Confidential Information, Trade Secret and/or proprietary information learned or acquired by Employee during Employee's engagement with OmniPrint from others with whom OmniPrint has or had a business relationship.

   f. Employee's post-engagement obligations contained herein with respect to Trade Secret Information or Confidential Information shall not apply if and to the extent Employee demonstrates that:

      i. the same information was rightfully in Employee's possession prior to Employee's engagement by OmniPrint, and that none of it had been misappropriated from OmniPrint;

      ii. the same information is or becomes publicly available and such public availability is not the result, directly or indirectly, of any fault of, or improper taking, use or disclosure by, Employee or anyone working in concert or participation with Employee; or

      iii. Employee obtains the information properly, from a source that was free to disclose it, and under circumstances such that Employee neither knew nor had reason to

4

know that such information had been acquired, used or disclosed improperly.

4. **Non-Competition During Employment**. Employee agrees that Employee will not, during the period of Employee's employment with OmniPrint: (1) engage in any employment or activity which is competitive to OmniPrint, or which is an area of business which OmniPrint might reasonable seek to enter; (2) engage in any outside employment which reasonably interferes with Employee's work obligations to OmniPrint; or (3) solicit any client/customer or potential client/customer of OmniPrint, for services which are similar to, or competitive with, those offered by OmniPrint.

5. **Restrictive Covenants After Employment**.
   a. Covenant Not to Use OmniPrint's Trade Secret or Confidential Information. During employment and post-employment, Employee agrees not to take, utilize, sell, share, communicate, transfer or otherwise disseminate OmniPrint's Trade Secret Information or Confidential Information, for the benefit of Employee or any other party, or with the intent to harm OmniPrint.
   b. Non-Solicitation After Engagement. Employee acknowledges and agrees that the names and contact information of OmniPrint's customers (whether actual, past, targeted or prospective) constitute Trade Secrets of OmniPrint, and that the unauthorized use or disclosure of any of OmniPrint's Trade Secrets would (among other things) constitute unfair competition;
   c. Tortious Interference with OmniPrint Employee Relations. Employee further acknowledges and agrees that the abilities, expertise, training, acquired knowledge and skills, and compensation of OmniPrint's personnel, constitute valuable Confidential Information and Trade Secrets. Employee further agrees that during Employee's employment with OmniPrint, Employee shall not seek to contractually interfere with any employee-employer relationship between OmniPrint and its employees, or induce or attempt to induce any OmniPrint employee to discontinue their employment with OmniPrint with the intent to cause harm to OmniPrint.

6. **OmniPrint's Right to Injunctive Relief**. In the event of a breach or threatened breach of any of Employee's duties or obligations hereunder, OmniPrint shall be entitled, in addition to any other legal or equitable remedies it may have in connection therewith (including any right to damages that it may suffer), to temporary, preliminary and permanent injunctive relief, restraining such breach or threatened breach. Employee acknowledges that the irreparable harm which might result to OmniPrint by an Employee breach of this Agreement.

7. **Assignment by OmniPrint**. This Agreement and/or the rights thereunder shall be freely assignable by OmniPrint, including through merger or corporate reorganization. This Agreement shall also inure to the benefit of, and be binding upon, any other entity which shall succeed to OmniPrint's business. Neither this Agreement nor any rights hereunder shall be assigned by Employee, since Employee's obligations and rights hereunder are personal to the Employee, and any such attempted or purported assignment shall be null and void.

8. **At Will Relationship**. Employee acknowledges that Employee is an "at will" employee of OmniPrint, meaning Employee can be terminated at any time, with or without cause, and with or without prior notice, at the option and the sole discretion of OmniPrint. Likewise, Employee has the right to quit and terminate their position at any time. Nothing herein shall alter or affect this at-will relationship.

9. **Amendments**. No modification or amendment of any of the provisions of this Agreement shall be effective unless made in writing and duly executed by the parties hereto.

10. **Notices**. All notices and other communications required or permitted to be given hereunder or by reason of this Agreement shall be in writing and shall be deemed to have been properly given (a) when delivered in person to the party to whom such notice is directed; (b) when delivered by reputable overnight courier with signature confirmation; or (c) three (3) days after being deposited in the United States mail, return receipt requested, postage prepaid to the party's last-known address as provided by such party.

11. **Judicial Interpretation and Enforcement.** Whenever possible, each provision, or subpart thereof, of this Agreement shall be interpreted so as to be valid and enforceable under applicable law. If any provisions of this Agreement shall be prohibited or invalid under applicable law, such provisions and/or subparts shall be modified and, to the maximum extent permissible under applicable law, enforced.

12. **Nonwaiver**. No delay or failure of either party to exercise any right under this Agreement, and no partial or single exercise of any right, shall constitute a waiver of that or any other right unless expressly provided for in writing, and no such waiver shall operate or be construed as the waiver of the same or of another breach on a prior or subsequent occasion.

13. **Multiple Counterparts**. This Agreement may be executed in any number of counterparts, and each counterpart hereof shall be deemed to be an original instrument, but all counterparts hereof taken together shall constitute but a single instrument. Signatures provided by facsimile or in portable document format (a/k/a pdf, or Docusign) shall be as binding as original signatures.

14. **Headings**. The paragraph headings or captions appearing in this Agreement are for convenience only, are not part of this Agreement and are not to be considered in interpreting this Agreement.

15. **No Oral Agreements**. It is expressly agreed that there are no oral or other verbal understandings or agreements which in any way change the terms, covenants, and conditions herein set forth.

16. **Notice to Others**. Employee hereby agrees that OmniPrint may disclose this Agreement (in whole or in part), or describe all or part of the contents hereof, to any person or entity, including without limitation, to a person or entity which employs Employee or which is considering the employment of Employee; or which is engaged in an actual or prospective business relationship with Employee.

17. **Choice of Law and Jurisdiction**. This Agreement shall be construed in accordance with and governed by the laws of the State of California, without reference to the conflicts or choice of law principles thereof. Any litigation arising out of and/or relating to this Agreement shall be filed and pursued exclusively in the State or Federal courts of the State of California, in the County of orange, and the parties hereto consent to the jurisdiction of and venue in such courts.

18. **Attorneys' Fees and Costs**. If any action is necessary to enforce this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs.

**PLEASE NOTE: BY SIGNING THIS AGREEMENT, EMPLOYEE IS HEREBY CERTIFYING THAT EMPLOYEE: (A) HAS RECEIVED A COPY OF THIS AGREEMENT FOR REVIEW AND STUDY BEFORE EXECUTING IT; (B) HAS READ THIS AGREEMENT CAREFULLY BEFORE SIGNING IT; (C) HAS HAD SUFFICIENT OPPORTUNITY BEFORE SIGNING THE AGREEMENT TO ASK ANY QUESTIONS EMPLOYEE HAS ABOUT THE AGREEMENT AND HAS RECEIVED SATISFACTORY ANSWERS TO ALL SUCH QUESTIONS; (D) HAS HAD THE OPPORTUNITY TO HAVE AN ATTORNEY REVIEW THE AGREEMENT ON BEHALF OF EMPLOYEE; AND (E) UNDERSTANDS EMPLOYEE'S RIGHTS AND OBLIGATIONS UNDER THE AGREEMENT.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

**EMPLOYEE**

Signed: _____

Edgar Ambriz
Print Full Legal Name

**OMNIPRINT INTERNATIONAL, INC.**

_____, CEO
Print Name & Title

7

**Attachment A**

*Employee's Preexisting Inventions & Intellectual Property*

Employee – In order to avoid confusion, and/or future disputes, please list your inventions and intellectual property which may, in any manner, be related to OmniPrint's line of business.

If you have no inventions, patents, copyrightable works or trademarks, check this box: ☒ No Inventions

**Employee Inventions and Intellectual Property:**

Signed by Employee: _____

Print Employee Name: _____Edgar Ambriz_____

Dated as of the Effective Date of the *Confidential Information & Inventions Assignment*

# EXHIBIT 2



## NON-DISCLOSURE – EMPLOYEE EXIT AGREEMENT

This Non-Disclosure - Employee Exit Agreement ("Agreement") is made as of this 29 day of October, 2021, by and between [Print Name & last Job Title held] _____Edgar Amoriz_____ ("Employee"), and **OmniPrint International, Inc.,** a Nevada entity ("OmniPrint") headquartered at 1672 Reynolds Avenue, Irvine CA 92614.    *Director of Product Development*

*Whereas, Employee has voluntarily resigned effective as of October 29th, 2021 and was employed since April 30, 2018*
*Whereas, Employee gained exposure to substantial amounts of confidential, trade secret and proprietary information of OmniPrint's, including ink and product formulas/creation, R&D strategies, technology and communications systems, and OmniPrint has a vested interest in protecting its confidential, trade secret and proprietary information;*
*Now therefore, in consideration of the mutual covenants and agreements contained herein, and intending to be legally bound, the Parties hereby agree as follows:*

1. **Employee's Duty To Maintain Confidentiality.** Employee acknowledges that he has had special access to confidential, trade secret and proprietary information of OmniPrint, including software programs and code, and the operational aspects of OmniPrint's technology, business and communications systems, which is not known to the industry or public ("Confidential Information"). "Confidential Information" also includes all of OmniPrint's non-public business information, such as any information or materials (in any form, format, medium of expression, or media whatsoever), whether it is: (i) orally communicated; (ii) obtained through visual or aural observations while having been on or in OmniPrint's premises or in OmniPrint meetings (wherever or however held, offsite, video-conferencing, etc.); and (iii) all of OmniPrint's business records and materials, or copies thereof. It also includes all information and materials related to OmniPrint's marketing, advertising, promotions, financial information (revenues, profits, pricing, sales margins, etc.), litigation and legal matters, personnel, intellectual property, business strategies, M&A, public offerings, specialized business methods / techniques, plans and know-how, manufacturing, engineering and product design, factory and production, corporate ownership and investors, distribution, territories, video-security footage, internal images of OmniPrint facilities, computer systems and software (including information on system hardware, system passwords, firewall protection and other IT security measures), data, patents and trademarks, copyrights and other creative materials, web pages, domain names, customer lists and any other sensitive, valuable and non-public information. *Per the terms of Employee's employment, which include the Employee Handbook, Confidential Information & Inventions Assignment, and all policies thereunder, Employee acknowledges the duty to maintain all Confidential Information in strict confidence. Employee agrees he shall not take or keep nor make copies of, share, disseminate, exploit, or otherwise use or disclose, any Confidential Information, including without limitation, customer lists, computer system access codes and passwords, company owned or developed software, data, data devices, inventions, marketing strategy plans, company ten year plan, video, or audio recordings of the OmniPrint facilities or of any employees or company activities.*

2. **Wages Paid.** Employee acknowledges that OmniPrint has fully paid all of Employee's wages through the employee's voluntary resignation date, including all accrued but unused vacation and holidays, less appropriate withholding and deductions.

3. **Non-Disparagement.** Employee agrees not to make any negative, defamatory, or derogatory remarks, statements or communication (in any form of expression, whether orally, in writing, on social media or through any other technology whether now known or hereafter devised), about OmniPrint (including its owners, management, employees and products), to any third-party or in any public forum.

4. **Return of Company Property.** Employee represents that he has left behind (at OmniPrint offices) all Confidential Information and company property. If Employee discovers he has any Confidential Information or company property in his possession, he shall immediately contact OmniPrint's head of Human Resources at liz@omniprintonline.com, and destroy or return the property, as directed by OmniPrint. OmniPrint property includes (without limitation) work-provided cell phone, laptop or computers, USBs and hard drives, technology accessories and devices, company ID, data files, materials, and supplies. Employee further agrees to delete all Confidential Information, if he later discovers any electronically stored Confidential Information in his personal possession (i.e., computers, phones, or other technological devices). This includes business related email, texts, photograph, or files.

AGREED by Employee: _____